Case No. 24-2062, United States v. Ricardo Delgado II. Argument not to exceed 15 minutes per side. Mr. Torres, you may proceed for the appellant. Good morning, Your Honors. May it please the Court. I'm Dennis Torres. I represent the appellant in this matter, Ricardo Delgado II. I reserve four minutes for my rebuttal, please. Thank you. Mr. Delgado, in this case, brings challenges against both the convictions and the sentence he received from the United States District Court for the Eastern District of Michigan in Bay City. The sentence was very severe, 60 years, 720 months. Mr. Delgado is 53 years old, so in effect, this is a life sentence. The odds could hardly be more severe. The challenges he brings to this court involve, as I mentioned, convictions in his sentence. From this long history of this very complicated case, though, the first set of challenges developed from a simple, single-word theme, time. At the beginning of the trial, the district judge violated the law by denying Mr. Delgado's motion to continue the trial for 60 days, two months. He had gotten many continuances before that, correct? That's correct. The last continuance he was seeking was because of the amended indictment? That's correct. But hadn't he known all of the elements of the amended indictment beforehand so that he would have had time to prepare? Yes to the first part of your question, Your Honor, and no, respectfully, to the second part of your question. The first part, they were negotiating a plea arrangement in April of 2024. Plea negotiations broke down when the supervisor in the U.S. Attorney's Office didn't approve what was assumed to be an agreement. As part of that negotiation, there was a draft of the third superseding indictment in this case given to defense counsel. To say, though, that he had then time to prepare would be inappropriate and inaccurate. First, that would require a dual track. That's not possible when you're negotiating a plea agreement. If you had an army of lawyers behind you and investigators, you might. But practically speaking, Your Honor, that's not possible. I know that you were not the trial counsel, but did the trial counsel give any indication or have you given any indication of what your client would have done if he had been granted a continuance that he couldn't do that prejudiced him? Yes. The third superseding indictment added three critically new elements, physical objects, a machine gun, fentanyl, and unlicensed or unregistered silencers. Those all needed to be investigated and couldn't be. But he knew they were all discovered at the same search of his house, correct? Correct, Your Honor, but if that argument holds, then it should have applied to the government. The trial began on June 20th. As late as June 17th, federal investigators were looking at the silencers. But that's beside the point, right? The government can do it whenever it wants. You should have, not you since you are counsel below, but counsel in theory could have procured an expert, could have procured whatever they needed. They never asked for it. They could have investigated the drugs. And even today, you can't say that wasn't a machine gun, that wasn't fentanyl. It pretty clearly was. They conceded as much at trial. So what would an expert have discovered that actually, like can you tell me today it's not a machine gun or that it's not fentanyl? No, Your Honor, but the distinction or the step needed for defense counsel to fulfill effective assistance is different. The trial witness now would have to testify about a machine gun on behalf of the defense. The fentanyl and the unlicensed, unregistered silencers, those witnesses were not lined up. It was unlicensed. It was a machine gun. It was fentanyl. What exactly would defense counsel have done differently that would have changed the outcome? Well, perhaps rebut the government's witness. That didn't happen. But how? Easily. There was reports about how this gun became a machine gun and the custody, the chain of custody. That could have been challenged. That wasn't. Why do you need an expert to challenge the chain of custody? The government had one. We would need to rebut if I was defense. A chain of custody? Yes. You can, if they, did you put them to their chain of custody burden? Your Honor, at trial, through no witness, of course, because there was no witness procured. There's no time. No, no, no. In a chain of custody, usually the government has to show the chain from the seizure to the courtroom. Did you put them to their burden or did defense counsel put them to their burden of chain of custody? Yes, they did. Okay. And so what would an expert have shown differently if the government had a chain? Well, let me explain. The witnesses for fentanyl, for example, for the defense, could have discussed purity. That's an important issue for sentencing. Could have discussed- Okay. If it's an important issue for sentencing, you add time after the conviction before sentencing. Did defense counsel get an expert and check the purity? Your Honor, at that point, it's too late. He's convicted of fentanyl. You just said for sentencing. Right. But the fact is that the testimony during trial is used for sentencing as it was here. You're talking about the mandatory minimum, not the guidelines when you're talking. Well, let me get to that point, Your Honor. That's a very important point. The complexion of this case changes, and we're kidding ourselves if we think it doesn't, when the new count, count number four, in the third superseding indictment for the very first time, adds a mandatory 30 years consecutive. From a defense perspective, from the obligations that defense lawyers have to fulfill under the Sixth Amendment, that changes everything. You may say, well, he had mandatory minimums in the second superseding indictment, too. He did. A total of 30 years. Now it becomes a mandatory minimum of 55 years. This is truly, count four, the tail wagging the dog. Three 30 years and 55 years are both essentially a life sentence for the defendant. One would think that, Your Honor, but that's not how defense works. And that's not how defense work operates. Defendants see distinctions that prosecutors don't. But every effective defense counsel prepares thoroughly for a 30-year mandatory minimum, just like they would a 55 or a mandatory life, because that, for any, you can't walk out on that street and say, 30 years mandatory minimum. Everyone says, essentially, that's a life. Of course, that's like saying that 25 years doesn't mean anything, and of course it does. It means the ability to come out while you're living, rather than coming out in a pine box. The first 30 means a lot more than the next 25. No question about it, but he survives the first 30. He doesn't the first 55, unless he lives like Methuselah. So if we could address the sentencing question. I'm concerned about whether there could be two 924C offenses, or whether they're derived from the same conduct, and so only one 924C sentence would be appropriate. In effect, Your Honor, to address that, the district judge ran them concurrent anyway. He said 30 years will put them all together, both 924C and the 30 years. So there was a five mandatory minimum years under 924C, under one of the counts, count five, and count four had the 30. And rather than make it 35, the judge simply said, let's run them concurrent at the government's house. I'm concerned whether there could be two, if they're derived from the same underlying conduct under our precedent, so that there would only be one available. Perhaps. Would it have made a difference? It might not have, Your Honor. You put words in my mouth on that one. It may not have, Your Honor, may not have practically made any difference, because count four was, again, the tail wagging the dog of 30 years. And if that were the only one, and that would have been the only one, then the 30 years is what he got. Did the district judge make a guideline calculation? No. Your Honor, let me shift to that. Out of all the complexity in this case, the law is very simple that we're applying. Two US Supreme Court cases say, start with the guidelines first, Gall versus United States and Reeder versus the United States. Guideline calculations in the 27-minute sentencing hearing never took place. On top of that, I might add that the distinction between mandatory minimum sentencing and guideline sentencing and how they overlap was never explained. Isn't it pretty clear from the transcript, though, I agree with you that it never occurred. Isn't it pretty clear from the transcript that they said it was 7-20 to life, the government said, and then the defense said, I absolutely agree. It's 7-20 to life. I'm butchering the language, but something to that effect. I remember reading the transcript. On the top part, the government's discussing it. The court turns to the defense and says, is that accurate? And they say, absolutely. Your Honor, yes, because that's the statutory language that the judge was reading from. Of course, no one's going to say the statute doesn't say that. 924 says that. 922 says that. 846 says that. When they're talking about 7-20 to life, you should correct me if I'm wrong. I thought they were talking about the total guideline sentence and not the statutory. I recognize because of the mandatory minimums it comes into play. But when they say 7-20 to life, they're not talking about 30 years, which would be 360 or something else as a mandatory minimum, but rather the guidelines itself. Your Honor, I wish that were the case. But if you read carefully, when he actually imposed this sentence, the district court on counts 6, 7, 8, and 9 doesn't look at the guidelines at all. He imposes the statutory maximum sentence. Take a look. Statutory minimum. No, the statutory maximum sentence, because those are not mandatory minimum counts. Counts 4 and 5 have mandatory minimums. Counts 1, 2, and 3 have mandatory minimums. But counts 6, 7, 8, and 9 were not mandatory minimums and ignored the entire guideline process in those. And the judge sentenced him to maximum of the statute. So was the 7-20 calculated by two 360s, if math is correct? Correct, Your Honor. And those were the statutory minimums, correct? For half. We have the gun counts, which are the mandatory minimums. Counts 4 and 5, that becomes 360 when the judge runs the 30 years and the five years together concurrently. That's counts 4 and 5. Counts 1, 2, and 3 are the drug counts. Those have a mandatory minimum as well, but the guidelines superseded those. The low end of the guideline was 360 months. That's how the second 360 months get formulated. So what was the statutory minimum for those counts? No, he ignored those, Your Honor. And what he did on those situations, in other words, counts 1, let me be clear, on counts 1, 2, and 3, he looked at the guideline range. The minimum was 360 months. That's how he gets the first 30 years. On counts 4 and 5, he runs count 4 together with count 5. That's how he gets to the second 30 years. But we still have, then, to deal with counts 6, 7, 8, and 9. Non-mandatory, assessed in the guideline calculation in the PSR, yet the judge sentenced him to statutory maximum. It says right in the transcript. Never mentions that that's what he's doing. In effect, he's taking some. But those are running concurrent, right? Correct, Your Honor. And they're running concurrent to the two 360s, right? No, they're running concurrent to 1, 2, and 3, counts 1, 2, and 3, because counts 4 and 5 have to run consecutively. Okay, but they're running concurrent to something that's already set. Correct, by the guidelines. He, judge, uses the guidelines at that point. For 1, 2, and 3, he doesn't refer to the statutory minimums or maximums for count 1, 2, and 3. What's the prejudice? Prejudice is huge, Your Honor. Explain why. This court reviews sentences just like we've asked it to do here. There's a reason why behind-closed-door sentencings don't occur. This court judges procedural reasonableness. I understand, but if he, let's say we send it back and he calculates the guidelines and he says 720 to life. And then he gives him 720, right? I mean, nothing changes at that point. Did he give him the bottom of the guidelines as calculated? For counts 1, 2, and 3, but not for counts 6, 7, 8, and 9. Right, but they're concurrent, correct? Correct, so is counts 1, 2, and 3. So are we at counts 1, 2, and 3? So the only way there's prejudice is if we knock some of the counts out. No, I disagree, Your Honor, with due respect. What is the prejudice? The prejudice, Your Honor, is to, for, honestly, for simple fairness, knowing that the sentencing wasn't a closed, behind-closed-door process that took place in less than a half hour. It's fairness. Mr. Delgado then gets to understand how he was sentenced. That's important. Does anything change? In other words, if he gives him 720 to life on 1, 2, and 3, which we all agree was, right? Does anything change on anything else? Let's say he gives him 360 to life on the others. So long as he doesn't run in consecutive, nothing changes. Correct, if he goes back and he runs it consecutive, I guess that gets worse for your client, but then something changes. But as long as he runs them concurrent, it doesn't change. I disagree again, Your Honor, with all due respect. For all the reasons that this court, in prior cases, has sent back cases on remand for resentencing and same sentences revisited, there's a sense of fairness in every federal. You can't point to prejudice as the cases define it. There's not a difference in the outcome. Oh, very much so. I again disagree. Every defendant is entitled to a fair sentencing. And if that was explained, Mr. Delgado, on counts 1, 2, and 3, I'm using the guidelines. On counts 4 and 5, I'm using the mandatory minimums. And in counts 6, 7, 8, and 9, I'm using the statutory maximums. His lawyer now has the ability to say, Your Honor, let me move specifically for variance on the guidelines, counts 1, 2, and 3, and let me also argue why the statutory maximum for counts 6, 7, 8. I only object when given the opportunity, if that's the case. Your Honor, I wish that were the case. I'm not. Is that ineffective assistance? Might be, Your Honor. I'll leave that issue for another day. Well, don't you have an independent obligation to review that and refer him to the bar if that's the case? I might. Thank you. Thank you, Your Honors. May it please the court, my name is Julie Beck, and I represent the United States of America. Ricardo Delgado is a three-time convicted professional drug dealer who defended his drugs with firearms, including machine guns. He understood the risks and rewards of his chosen profession and repeatedly chose that profession again and again. His jury conviction of nine counts related to that chosen profession should be affirmed. I can jump to sentencing. That seems to be an issue that the court would like explained. I want to state at the outset that we are under plain error review. And under that analysis, the sentence should be upheld. While the district court did not specifically state the guidelines on the record, the government did. And the district court noted that. Weren't there several different variations of what the guidelines would provide? Like the probation office had one variation, the government had one, the defense had one, and then the district judge never says what he's picking. He does say what he's picking. Yes, Your Honor, that is correct. First of all, there was a lengthy discussion about concurrent or consecutive sentencing on counts four and five. And during that discussion, the government said it was unclear, there was some ambiguity on whether there was enough information to show that those firearms were possessed on different occasions. So the government engaged in a lengthy discussion with the court about the concurrent nature of counts four and five. But before that, the government had said the PSR notes that the guidelines are 780 months to life. And then everyone agreed that 720 months to life was, in fact, the guideline range, given that counts four and five would run concurrent. So the decrease from 780 to life, which you said was the sentencing guideline range, but then it's now 720 to life, because you take out the 60 for the count on four and five, where you can only have one count, correct? Correct. So should he have been convicted on both counts, or is the question really the penalty phase, the sentencing phase? The question is the penalty phase of the sentence, Your Honor. And then what ended up happening after this discussion about counts four and five, and allocution by Delgado, the government, where the government talked about the guideline range again, the court did its 3553A analysis, and then said at record 4590, I also believe that a guideline sentence is warranted. The premise that Delgado advances is that nobody knew what the guideline range was, is simply not true. There was enough meaningful discussion of the guideline range, reference to the PSR, and then if you take this through to the very end, after the judgment and commitment order, there was the statement of reasons that likewise stated that the guideline range was 720 months to life. And so there was enough information here on the record, despite the fact that the district court did not use the word or state the guidelines specifically on the record. And that is what this court must look at, whether or not there is enough information for this court to conduct meaningful appellate review of the sentence, and there is enough, particularly under plain error review. He did not preserve any objections at sentencing, so we are not here for abuse of discretion. Rather, it was a plain error analysis. Did the judge sentence to the max on count six through nine? It did. It did, Your Honor, yes. And are you saying that that's just irrelevant because it was running concurrent? No, I don't think it's irrelevant, Your Honor. Well, wouldn't you expect an explanation if a judge is sentencing to the max on a few counts? I think that the approach the court took, because the mandatory minimums were looming so large in this case, it began its analysis of going through the mandatory minimums and supervised release on every single count. That seemed to be what was really important for the court to set forth for all the parties of what the floor was. And then as it listened to both parties present their arguments, including references to the objections, it became clear that the judge said, there's a guideline range sentence that I believe is warranted. And then he sentenced him to 720 to life and took great care to go through what was concurrent and what was consecutive for each particular count. Didn't the district judge say he was granting a variance? It did, because in the PSR, the guideline range was stated as 780 months to life. Why is that a variance when you explained that it was a correction of the counts four and five not being allowed to be both? I believe that because the PSR stated that the correct guideline range was 780 months to life, and then the government advocated for a 720 months to life sentence based on the consecutive concurrent argument as to counts four and five, that the court was being careful to say that the PSR guideline range was correct. It's varying downward, accepting the government's argument or position that counts four and five should be consecutive. And then went to that guideline range and sentenced him to 720 months. But he wasn't making four and five consecutive. No, he was making them concurrent. That's correct. Correct. So on plain error review, there is simply enough information for this court to conduct meaningful appellate review. There was no plain error. And while a defendant argues that his substantial rights were affected, that is true in every single case whenever someone is sentenced to custody. Their substantial right of liberty is affected. But there is. Why shouldn't we say that there should be a clear explanation from the district judge as to how he computed the guideline range, and how he computed any mandatory minimums or maximums, and how those impact. And that based on this record, there is not clarity. And so there's procedural unreasonableness here. The sentence was not procedurally unreasonable. The district court didn't follow the script that Delgado advocates for. But it did include all of the meaningful parts of the sentence. And this court's case law does not demand that the guideline range be stated verbally on the record. 3553C2 talks about the district court's requirement to state its reasons for the sentence on the record. And clearly, it did that here. The government stated the guideline range. Delgado agreed to that guideline range. So did the court. And so again, while the district court didn't follow a particular script, it nonetheless did what it needed to do to impose sentence. But I want to make sure I understand what you're saying. I said, is it because those sentences in six through nine were concurrent that it doesn't matter? And I think you're saying it is. It's because are you saying the reason it doesn't matter is because the sentences on six through nine just don't make a difference? Yes, Your Honor, that is correct. They don't make a difference. What was important was the consecutive nature of the 360 months on counts four and five and the other counts related to 924C and 922O. And so it doesn't make a difference in the end as to whether the court states the stat max on counts one, two, three, et cetera, are this or that. The mandatory minims were driving the drug counts. And the 924C, the machine gun, and the 922G were driving the consecutive concurrent stacking of the 360 months. That's what mattered in terms of the overall sentence. What evidence was there on four and five to show that they were from different occasions? Well, there wasn't. There wasn't. Those guns were found at Delgado's residence all on March 22nd of 2022. So I'm still getting back to the question, how can you have two 924C convictions when the two firearms are found at the same place at the same time? And the theory of both of them is that they're protecting the drugs, correct? That is correct. I think that for trial, the idea that the firearms were protecting the guns, the 924C count, given the proofs that were coming in and how the third superseding indictment was charged is what was relevant. When they got to sentencing and the government started looking at the overall sentencing and what the defendant was exposed to, that in fact, it determined that there was enough ambiguity that it would concede that those two counts should be run concurrently as opposed to consecutively. I think that was a decision for sentencing and not something that happened during trial. Did the defendant ever move to dismiss count five or argue that it was duplicative? No, it did not, Your Honor. And did he agree at sentencing with the fact that to treat it concurrently? Yes, he did. So if there are no further questions on the sentencing, I'll move back to how Delgado started, which was talking about the continuance. The courts already noted that, in fact, there were numerous continuances requested by Delgado and that every one was granted except that final one. And what was really important, that there was only one argument that Delgado preserved below, and that was that he should be able to file additional pretrial motions. But in fact, after that third superseding indictment was unsealed and presented, he filed eight motions. So he had sufficient time to continue to challenge various aspects of discovery, various aspects of things that might happen at trial. So he had enough time to file eight additional motions. And as the court has already picked up on, those requests were vague. Maybe I would do this. Maybe I would do that. Maybe I could have done this or that. This case was always about guns and drugs from the beginning. The fentanyl was seized from the defendant's car. The cocaine was seized from his residence. The firearms were seized from the residence. And the only report that the defendant didn't get in discovery before trial, before actually voir dire, was in fact, the report from the ATF Special Agent Lagana about the silencers. It's the only one. And he still received that report on the 21st in advance of trial. So the defendant had all of the discovery well in advance of when the trial came along. And the idea that there was a plea agreement that wasn't approved, it's not on the record. There was, in fact, a valid approved plea agreement which the defendant rejected. It was what the parties were negotiating around April 15th. The government conceded that, as it began to prepare for trial, when it looked like plea negotiations were going awry, were not going to be fruitful, that it began to prepare for trial. And it began to hone what it needed to present and to review the evidence that it had already produced in discovery, but that it was making trial decisions. And when it realized that there were other, the silencers, or that it could charge the fentanyl now, it hadn't previously, and it only charged the cocaine, then the government said, we'll stand by this plea agreement. We'll stand by it. However, if you don't accept the plea agreement, then we are going to supersede, and here's a copy. And about a month in advance of when that third superseding indictment was unsealed, Delgado had a copy of it, of all of those additional counts. So we had a full month in between the plea negotiations that were ongoing and that continuance that he had requested around the 15th of April. And for another month, he had all of that information in front of him, and he, in fact, rejected the plea, and the parties began to proceed. And so the trial judges, they have broad discretion on matters of continuances, and they require a lot of latitude in managing witnesses, lawyers, and jurors, and this counsels against continuances. But it does seem like the third, that the new indictment that's adding a 30-year mandatory minimum sentence if convicted, and adding a new drug that you're pointing out was seized in a new place, that could have led to different trial preparation and a need for more, whether it's an expert on the nature of the fentanyl or other kinds of issues. So given that there were six continuances already, why not say it's an abuse of discretion to deny a continuance then? Because the court still has to manage its docket, and there was still a month before, between this third superseding indictment and trial. Did he move for experts, or appointment of experts, or any of that? No, he did not. And then at trial, he didn't object to the admissibility of the fentanyl, nor did he question the purity of it. He didn't object to any of the evidence that came in regarding the machine guns or the silencers. Your Honors, I can see that my time is up, and so if there are no further questions, I would ask that the judgment be affirmed. Thank you. Thank you. Let me rapidly go through some of those points that we just heard. There was no variance. Your Honor, that's the simple question, simple answer to the question. Second, the reason count four, excuse me, the machine gun count troubles you insofar as it's a dual 924C conviction, is it was piling on. Government wanted to add to the piling on of these charges. Rather than detract, they added. They weren't thinking. That's the answer, Your Honor, the truthful answer. Second, third, there was a script here to follow. It's not Delgado's script. Mr. Delgado. Did counts four and five have merged, or is treating them concurrently appropriate? They treated them concurrently for sentencing, Your Honor. There was never an issue at trial about whether they should be merged nor in advance of trial. So no one ever raised it. You're not arguing it today. Neither the government nor the prosecutor, excuse me, neither the government nor the defense ever raised it, Your Honor. It never came up, because the sense was, keep in mind, in April, in May, this superseding indictment, the arraignment occurred on May 25th. Trial began on May. You can even move after conviction for a merger. Correct, that didn't happen, Your Honor. Okay. Third point. Judge White, you mentioned about the mandatory minimums in the guideline sentence, and you were the one who mentioned also the maximum sentences for counts six, seven, eight, and nine. I might add just one argument to that. Had that been explained to Mr. Delgado at sentencing, he could have said, wait, maximum sentence? Am I the worst of the worst? Two of the counts were possession of a gun. How can I be the worst of the worst in a possession of a gun? Am I wrong that the max overall was life? No, no, not for counts six, seven, eight. No, no, no, overall. Correct. So if you stack them, you get the max is life. Right, that's the issue of concurrence in consecutive history. Right, okay. Worst of the worst is what this court has always explained, and so is the Supreme Court, why we have statutory maximums, not mandatory maximums, different. One's a cell phone count. Count nine is the use of a cell phone. How was his use of a cell phone the worst of the worst example? But wasn't the use of the cell phone where he suggested shooting someone and killing them? Never came up as a count in trial, Your Honor, because it was never a count in the third indictment. So no, that was irrelevant. That was just, Your Honor, let's face it, that was just character evidence. The government wanted to make this man look like a bad guy doing bad things. And the voir dire, if the transcripts read carefully, you'll see there are a number of potential jurors who say, wow, I want to see a machine gun. One person actually says that. Machine guns were always an issue in this matter, Your Honor. So the fact is that was a way to taint and add the character evidence. Your Honor, the same thing, by the way, with the probation officer statement. That was mere propensity evidence. He did it once, he's going to do it again. Again, the law is very simple here. Let me add one final point, Your Honor. And I take pause on this one because it's so important. The prosecutor would have this court believe that it really doesn't matter because the mandatory minimum sentences were the tail wagging the dog. That's never been our jurisprudence, Your Honor. If that were so, we'd take mandatory minimums and say, hey, we're going to sentence these differently. Gall and Rita do not say that. United States versus Vonner, a non-bank opinion of this court does not say that. Mr. Delgado has as much right to a fair sentencing as the person who's sentenced to probation. In 60 days, if I could address that just as a last point in fairness, for each day Mr. Delgado asked for an extension, he got a year additional in prison. Your Honor, there were multiple things that could have been done with that additional time. Judge didn't even say, fine, I'll give you two more weeks, four more weeks, how about one more week? He gave zero additional weeks. And what's good for the goose is good for the gander. The government waited until June 20th, the day of Vardir, to examine the machine gun. A few days later, or a few days earlier, excuse me, it was examining the silencers. And when the government says he was given the report well in advance of trial, on June 21st, trial began 24th, Vardir had already taken place on the 20th. Your Honor, for those reasons, we ask that the convictions and the sentence be reversed and remanded for appropriate proceedings in the Eastern District of Michigan and Bay City. Thank you. Thank you. Thank you both for your argument. And Mr. Torres, I see that you're appointed pursuant to the Criminal Justice Act, and we thank you for your service under the act to your client. Thank you, Your Honor. It's always a privilege to be here. Thank you. Thank you all. The case will be submitted, and the clerk may call the next case.